COMMONWEALTH of Pennsylvania,
Appellee,

v.

Franklin JOHONOSON, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 22, 2003.
Filed Jan. 26, 2004.
Reargument Denied April 1, 2004.

Franklin Johonoson, Appellant, Pro Se.

Julie M. Hess, Asst. Dist. Atty., West Chester, for Com., appellee.

Nicholas J. Casenta, Asst. Dist. Atty., West Chester, for Com., appellee.

BEFORE: ORIE MELVIN, LALLY–GREEN, and KELLY, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Franklin Johonoson, appeals *pro se* from the judgment of sentence imposed on December 18, 2002, following his conviction for Driving Under the Influence (DUI), 75 Pa.C.S.A. § 3731(a)(4). We affirm.

¶ 2 The factual and procedural history of the case is as follows. At approximately 3:00 in the morning on October 17, 2001, Pennsylvania State Trooper Mark Perloff noticed Appellant driving his vehicle on a rural road. Appellant was driving substantially lower than the speed limit, with his four-way hazard lights flashing. Ap-

pellant then pulled off the side of the road, without any signal from the Trooper. The Trooper followed Appellant off the side of the road, parked his patrol car, and then activated the lights on his car for safety purposes. The Trooper then walked up to Appellant's car. As he approached, he noticed severe damage to both sides of Appellant's car.[1]

¶ 3 The Trooper began speaking to Appellant to determine whether he had recently been in an accident. The Trooper immediately noticed indicia of intoxication: a strong odor of alcohol on Appellant's breath and within the vehicle; glassy, bloodshot eyes; and labored speech. The Trooper asked Appellant if he had been in an accident, and also asked if Appellant had been drinking. Appellant responded that he had recently been in an accident, and that he had drank three Old Milwaukee beers several hours previously. Appellant failed one field sobriety test, and told Trooper Perloff that knee problems prevented him from attempting a different test. Appellant was subsequently arrested and charged with Driving Under the Influence. A breathalyzer test conducted at 4:00 a.m. revealed a blood alcohol content (BAC) level of 0.114.

¶ 4 Appellant filed a *pro se* suppression motion. The court held a suppression hearing on May 7, 2002. At this hearing, Appellant represented himself and testified as a witness. Appellant attempted to litigate a great number of pretrial claims unrelated to suppression, but the suppression motion itself centered primarily on Appellant's statement to police that he had been drinking. Specifically, Appellant ar-

gued that his statement should be suppressed because Appellant did not feel free to refuse to answer the Trooper's question. On May 30, 2002, the trial court denied this motion.

¶ 5 Next, on August 5, 2002, the court held a hearing on three outstanding pretrial motions. Appellant had standby counsel for this proceeding (Christian Hoey, Esq.). Appellant argued that: (1) his waiver of arraignment was invalid because it was signed by his public defender, rather than by himself personally; (2) the complaint was not timely filed; and (3) there were unreasonable delays between his arrest, preliminary arraignment, and preliminary hearing. The trial court denied these motions on September 11, 2002.

¶ 6 On September 12, 2002, Appellant filed a *pro se* "objection and motion" in which he raised additional suppression issues. For the first time, Appellant argued that the entire stop was illegal. Specifically, Appellant argued that after both vehicles were parked on the side of the road, the Trooper illegally "seized" Appellant by turning on his flashing lights without any prior reasonable suspicion of illegal activity. This motion was denied as untimely on November 21, 2002.

¶ 7 On October 24, 2002, Appellant filed a *pro se* motion to dismiss the case under Pa.R.Crim.P. 600 (formerly Rule 1100). This motion was denied on November 21, 2002.

¶ 8 The case finally proceeded to a two-day jury trial on December 17–18, 2002. Appellant represented himself, with Attorney Hoey as standby counsel. Appellant

---

1. During the suppression hearing, the Trooper indicated that he saw damage to Appellant's vehicle while Appellant and the Trooper were both driving down the road. N.T., 5/7/2002, at 20. The Trooper's affidavit of probable cause suggests that he did not see any damage until both vehicles were pulled

off to the side of the road. In either case, the evidence is undisputed that the Trooper did not pull Appellant off of the road. Rather, Appellant pulled off the road and stopped on his own volition; the Trooper did likewise; then the Trooper turned on his lights for safety purposes and approached Appellant.

was acquitted of DUI under § 3731(a)(1) (DUI—incapable of safe driving), but was convicted of § 3731(a)(4) (DUI—driving with BAC of .10 or more). That same day, Appellant was sentenced to three to 23 months' imprisonment with credit for time served. Appellant filed *pro se* post-sentence motions on December 24, 2002, and a series of additional and untimely *pro se* motions in early April 2003. Appellant's post sentence motions were denied on April 23, 2003. This timely appeal followed.[2]

¶ 9 Appellant raises seven issues for our review:

1. Did the lower court abuse it's discretion when it denied this Appellant's pre-arraignment omnibus pre-trial suppression motion and claims?

2. Did the lower court abuse it's discretion by denying this Appellant any possibility of receiving a fair trial by it's failing or refusing to hold an evidentiary hearing upon three "crucial" defense motions and the claims within?

3. Did the pre-trial defense counsels render ineffective assistance, and the stand-by counsel interfere with this Appellant's defense—all to the point that this Appellant was denied and deprived of any possibility of receiving a fair trial?

4. Was evidence sufficiently presented to the jury to support the statutory foundation (as required prior to presenting the evidence to the jury) to support the statutory foundation of introducing scientific or experimental [chemical] intoxication test?

5. Did the lower court judge "testify as a fact witness" to the jury and also "lie" to the jury during this Appellant's trial?

6. Did the Affiant (Trooper Mark D. Preloff) "falsely testify" to the jury upon four material facts during trial?

7. Did two separate Assistant District Attorneys commit [prosecutorial] misconduct in this case?

Brief for Appellant at XV.

¶ 10 First, Appellant argues that the trial court erred by denying his suppression motion. Specifically, Appellant argues that he was detained without reasonable suspicion when the Trooper pulled behind him on the side of the road and activated his overhead lights. Appellant argues that all evidence stemming from the stop should be suppressed as the product of an illegal detention.

¶ 11 When reviewing rulings of a suppression court, we must determine whether the factual findings are supported by the record and the legal conclusions drawn therefrom are correct. *Commonwealth v. Lehman*, 820 A.2d 766, 770 (Pa.Super.2003). We are bound by the facts found by the suppression court if there is support for those findings in the record. *Id.* We will not substitute our credibility determination for that of the suppression court if there is sufficient evidence for the ruling. We review the court's legal decisions *de novo.*

¶ 12 As noted above, the trial court dismissed this suppression issue as untimely filed. Under Pa.R.Crim.P. 581(B), the defendant shall file suppression issues within an omnibus pretrial motion. "The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppres-

---

2. On May 8, 2003, the trial court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925 within 14 days. Appellant raised 27 issues. The trial court issued a Rule 1925 opinion on June 13, 2003.

sion, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). Thus, "the rule is designed to provide one single procedure for the suppression of evidence[.]" Rule 581, official comment. A defendant may file supplemental motions to suppress, but only "unless the opportunity did not previously exist, or the interests of justice otherwise require." Pa. R.Crim.P. 581(B); *Commonwealth v. Micklos*, 448 Pa.Super. 560, 672 A.2d 796, 802 (1996).[3] "The 'interests of justice' exception provides a trial judge with discretion to excuse a party's tardy presentation of a suppression motion." *Id.* We review the court's decision on these matters for an abuse of discretion. *Id.* An abuse of discretion is not a mere error of judgment. Rather, it exists where the judge acts manifestly unreasonably, misapplies the law, or acts with partiality, bias, or ill will. *Id.* at 803.

¶ 13 The record reflects that in his initial motion to suppress, Appellant argued only the limited issue of whether his statement to Trooper Perloff was voluntary. Four months later, after the court had ruled on Appellant's motion to suppress, Appellant raised a supplemental motion to suppress. In this supplemental motion, Appellant argued for the first time that the entire encounter on the side of the road was an illegal investigative detention. The trial court denied this supplemental motion as untimely.

¶ 14 We agree. Appellant knew the facts and circumstances surrounding the stop. Trooper Perloff testified at the suppression hearing that he turned on his lights after pulling off to the side of the road behind Appellant. Thus, Appellant could have easily argued during the initial suppression hearing that the entire stop

was the product of an illegal detention unsupported by reasonable suspicion or probable cause. Appellant did not do so. We see no error of law or abuse of discretion in the court's decision to deny Appellant's supplemental suppression motion as untimely.

■ ¶ 15 Even if the suppression motion should not have been dismissed as untimely, we would conclude that there is no basis for suppressing the evidence in this case. This is so because Trooper Perloff did not "seize" Appellant by turning on the patrol car's overhead lights. Rather, as noted *infra*, this was part of the initiation of a mere encounter.

¶ 16 Our Supreme Court recently explained the three levels of interaction between citizens and police as follows:

A primary purpose of both the Fourth Amendment and Article I, Section 8 "is to protect citizens from unreasonable searches and seizures." *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (Pa.2001). Not every encounter between citizens and the police is so intrusive as to amount to a "seizure" triggering constitutional concerns. *See Commonwealth v. Boswell*, 554 Pa. 275, 721 A.2d 336, 340 (Pa.1998) (opinion in support of affirmance) (citing *Terry v. Ohio*, 392 U.S. 1, 20 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). This Court has noted that there are three basic categories of interactions between citizens and the police. The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry v.*

---

**3.** If the court determines that the evidence shall not be suppressed, that decision is final and binding at trial, "except upon a showing of evidence which was heretofore unavailable." Pa.R.Crim.P. 581(J).

*Ohio* and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause. *See [Com. v.] Ellis,* [541 Pa. 285,] 662 A.2d [1043] at 1047–48 [1995]; *see also In the Interest of D.M.,* 781 A.2d at 1164. This Court has acknowledged this approach to police/citizen encounters under both the Fourth Amendment and Article I, Section 8. *See Commonwealth v. Polo,* 563 Pa. 218, 759 A.2d 372, 375 (Pa.2000) (construing Article I, Section 8); *Ellis,* 662 A.2d at 1047 ("Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and police.").

*Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 10 (2003).

¶ 17 Critical to our determination is the fact that Appellant pulled off the road voluntarily and came to a full stop on the side of the road without any prompting from Trooper Perloff.[4] Trooper Perloff then parked behind Appellant's vehicle, activated his overhead lights, and approached Appellant to see if he could be of assistance. Trooper Perloff did not stop Appellant's vehicle.

¶ 18 Appellant relies almost exclusively on Trooper Perloff's flashing lights as a signal that he was "not free to leave," thus making the interaction an investigative detention. We recognize that flashing overhead lights, **when used to pull a vehicle over,** are a strong signal that a police officer is stopping a vehicle and that the driver is not free to terminate this encounter. The same is not necessarily true under the factual circumstances presented here. It is one traditional function of State Troopers, and indeed all police officers patrolling our highways, to help motorists who are stranded or who may otherwise need assistance. Such assistance is to be expected, and is generally considered welcome.

¶ 19 Often, and particularly at night, there is simply no way to render this aid safely without first activating the police cruiser's overhead lights. This act serves several functions, including avoiding a collision on the highway, and potentially calling additional aid to the scene. Moreover, by activating the overhead lights, the officer signals to the motorist that it is actually a police officer (rather than a potentially dangerous stranger) who is approaching.

¶ 20 By pulling over to the side of the road at 3:00 in the morning on a rural road, after driving slowly with his hazard lights on, Appellant should have had reason to expect that a police officer would pull over and attempt to render aid. Indeed, by his own repeated admissions, Appellant had recently been in a serious accident and was lost on a dark country road. Appellant is exactly the sort of person whom Trooper Perloff has a duty to assist. The fact that Trooper Perloff activated his lights in the course of doing so does not turn the interaction into an investigative detention. Rather, it remained a mere encounter for which no suspicion of illegal activity was required.

---

4. The suppression court found as a fact that "the trooper activated his siren and emergency lights, and the vehicle pulled over immediately." Suppression Hearing Memorandum, 05/30/02, at 1. We are constrained to hold that this assertion has no support in the record. The Trooper did not activate the lights until after Appellant had pulled over on the side of the road. Although this clarification is necessary, the real issue is the nature of the encounter between Trooper Perloff and Appellant after they both pulled off the road.

¶ 21 Further support for this proposition lies in our Supreme Court's recent decision in *Smith.* In that case, the Court recently examined the "free to leave" test in the context of a drug interdiction on a bus which had come to a scheduled stop. Officers boarded the bus, announced their purpose, and asked passengers if they could examine their bus tickets and/or luggage. The Court held that the "free to leave" test was inapposite, given the fact that the passengers had chosen to use a bus which had come to a scheduled stop. *Id.* at 12. Rather, given the factual circumstances of that case, the relevant test was whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 12 (citation omitted).

¶ 22 In the instant case, we similarly hold that the "free to leave" test is inapposite. The unique difficulties surrounding initiating an encounter on the highway give rise to our conclusion. Again, Appellant had stopped on the side of the road on his own volition. Next, officers often simply have no safe way to initiate a mere encounter except for activating their flashing lights. Such an encounter can safely commence only after the officer turns on his lights, approaches the driver, and begins asking questions. Under these circumstances, the relevant inquiry is not whether flashing lights convey a signal that a motorist is not free to leave. Rather, the relevant inquiry is whether a reasonable person would feel free to "decline the officer's requests or otherwise terminate the encounter" once the officer approaches the driver and begins asking questions. *Smith.*

¶ 23 For these reasons, we conclude that the interaction between Appellant and Trooper Perloff was a mere encounter up to the point that they met face to face. Upon encountering Appellant, the Trooper immediately noticed the classic signs of intoxication. Given that Trooper Perloff saw these signs from a lawful vantage point in the course of a mere encounter, there was no basis for excluding this evidence. *Smith, supra* at 11 (the mere approach of an officer to ask questions generally does not amount to a seizure). From this point forward, even assuming that the encounter became an investigative detention, there was no basis for suppressing Appellant's statements because the Trooper had probable cause to believe that Appellant had committed DUI. Appellant's statement to the Trooper that he had been drinking took place early in the encounter, while Appellant was still in the vehicle. N.T., 12/17/2002, at 61. Appellant was not under arrest or the formal equivalent thereof at the time; thus, the Trooper was not obligated at that time to read Appellant his *Miranda* rights. *Smith, supra* at 17–18. Appellant then failed the field sobriety tests and was placed under arrest. Additional evidence of DUI (namely, open bottles of beer in the passenger side of the vehicle) was discovered after Appellant was placed under arrest. *Id.* at 65. The trial court did not abuse its discretion or err as a matter of law in failing to suppress evidence. Appellant's first claim fails.

¶ 24 Next, Appellant argues that the court acted with bias and prejudice by failing to hold an evidentiary hearing on three of his pretrial motions, and by chastising him for his *pro se* filings. We have thoroughly reviewed the entire certified record, and find no basis for concluding that the Honorable Paula Francisco Ott acted with bias or prejudice. To the contrary, we are impressed with Judge Ott's handling of this matter. Judge Ott admirably and patiently attempted to make sense of Appellant's often rambling and extremely verbose *pro se* filings. The

court held hearings to decipher and rule on many of Appellant's pretrial claims, and explained her reasoning for denying those claims in numerous orders. Often, the court indicated that Appellant's numerous pretrial *pro se* filings actually may not have been in Appellant's best interest, insofar as they delayed trial and caused Appellant to remain in jail longer than necessary. These remarks reflected a concern for Appellant's welfare and the proper handling of his case, rather than bias or prejudice. Appellant's second claim fails.

¶ 25 Third, Appellant argues that pretrial and standby counsel were ineffective. Ordinarily, we would defer these issues to a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002). On the other hand, the record reflects that Appellant has already served his sentence for this DUI, and thus, would not be entitled to relief under the PCRA. *Commonwealth v. Salisbury*, 823 A.2d 914 (Pa.Super.2003). Accordingly, we will briefly address these issues on direct appeal.

■■■ ¶ 26 To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582, 586 (1999). We presume counsel is effective and place upon Appellant the burden of proving otherwise. *Commonwealth v. Howard*, 749 A.2d 941, 949 (Pa.Super.2000). Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. *Id.* at 957.

■■■ ¶ 27 First, Appellant argues that a public defender forged Appellant's signature on a waiver of pretrial arraignment. Appellant further argues that all prior counsel were ineffective for either "covering up" this issue, or for failing to litigate it thoroughly. Appellant goes to great lengths to explain the error, but fails to develop any argument as to how he was prejudiced by the waiver of pretrial arraignment. This claim fails for lack of demonstrable prejudice.

■■■ ¶ 28 Next, Appellant argues that standby counsel, Attorney Hoey unlawfully "intercepted" and "confiscated" many of his legal papers, thus preventing him from properly litigating his claims. Aside from the fact that these claims are not borne out by the record, Appellant has failed to explain or demonstrate in any coherent way how he was prejudiced by Attorney Hoey's actions.[5]

■■■ ¶ 29 Finally, Appellant argues that Attorney Hoey was ineffective for failing to procure or call an expert to rebut the Commonwealth's evidence regarding Appellant's BAC at the time of driving. The record reflects that Appellant was provided with funds to procure a defense expert, and that Attorney Hoey did find an expert. On the first day of trial, Attorney Hoey had difficulty contacting the expert. N.T., 12/17/2002, at 7. Later in the day, Attorney Hoey stated the following for the record:

We did have a discussion at the break before lunch with the expert. Dr. Saferstein spoke directly with the defendant at the defendant's request for about 15

---

**5.** From our view of the record, Attorney Hoey provided able assistance in the difficult role of standby counsel for this Appellant. We particularly note the highly skillful way in which Attorney Hoey took over Appellant's representation midway through the trial.

to 20 minutes, and he is unable to render any opinions that would benefit the defendant at this time. We will forgo calling him as a witness.

*Id.* at 12–13.

¶ 30 We will assume that Appellant's claim has arguable merit, insofar as expert testimony is often important to rebut the permissible inference set forth in 75 Pa. C.S.A. § 3731(a.1) that a BAC level of over .1% within three hours of driving shows that Appellant had such a BAC level at the time of driving. *See, Commonwealth v. Murray*, 749 A.2d 513 (Pa.Super.2000) (*en banc*).

¶ 31 We conclude that Attorney Hoey had a reasonable basis for declining to call Dr. Saferstein. At trial, and throughout the proceedings, Appellant insisted that he had **nothing** to drink for at least **four days** prior to the night in question. N.T., 12/17/2002, at 47. This is not a case where Appellant drank a small amount of alcohol, and expert "relation back" testimony could have reasonably established that Appellant's BAC was actually below .1% at the time of driving. In other words, expert "relation back" testimony was not necessary to Appellant's case, because Appellant completely denied drinking any amount of alcohol.[6] This claim fails.

 ¶ 32 Appellant's fourth claim is that the Commonwealth lacked probable cause to believe that Appellant had committed DUI; therefore, the Commonwealth lacked any legal basis for subjecting Appellant to a breath test under the Implied Consent Law, 75 Pa.C.S.A. § 1547(a). The Implied Consent Law provides, in relevant part:

Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle: (1) while under the influence of alcohol or a controlled substance or both[.]

Section 1547(a)(1) is valid if a police officer has probable cause to believe that the defendant has been driving under the influence. *Commonwealth v. Slonaker*, 795 A.2d 397, 401 (Pa.Super.2002).

¶ 33 In the instant case, before administering the test, Trooper Perloff noticed that Appellant had glassy, bloodshot eyes, that he smelled of alcohol, and that he had labored speech. Appellant also failed a field sobriety test, and open bottles of beer were found in his car. This evidence was sufficient to present probable cause that Appellant had been driving under the influence. *See, Slonaker*, 795 A.2d at 402. The remainder of Appellant's argument is essentially a restatement of his claim that the Trooper illegally detained Appellant's vehicle by pulling behind him and turning on the patrol car's flashing lights. For the reasons set forth above, this claim lacks merit. Appellant's fourth claim fails.

 ¶ 34 Appellant's fifth claim is that the trial judge impermissibly acted as a "fact witness" and lied to the jury regarding the substance of a sidebar conversation

---

6. Appellant did argue that at some point during his encounter with Trooper Perloff, he gargled with a breath freshener that was "2% alcohol." N.T., 12/17/2002, at 48. Appellant presented no evidence of this fact at trial. In any event, Appellant has failed to demonstrate on appeal that expert testimony could have established that a BAC reading of .114% could arise from using breath freshener.

at trial. We have reviewed the trial transcript where the alleged "lie" took place (N.T., 12/18/2002, at 101–103). The record reflects that the parties had a sidebar conversation regarding how to move the case along in light of Appellant's *pro se* cross-examination of Trooper Perloff. The trial court told the jury that the sidebar conversation had to do with whether or not the parties had a transcript of a prior hearing. *Id.* at 103. While the accuracy of this summary is debatable, it is completely innocuous and in no way could have deprived Appellant of a fair trial. This claim fails.

¶ 35 Next, Appellant argues that Trooper Perloff committed perjury at trial. Initially, we note that it is not the province of this Court to declare whether Trooper Perloff committed perjury. Rather, such charges are brought by the Commonwealth in a separate prosecution. We further note that Appellant's claim is best viewed as one challenging the weight of the evidence. *Commonwealth v. Widmer*, 547 Pa. 137, 689 A.2d 211 (1997).[7] Such a claim is reserved to the discretion of the trial court, who had the opportunity to observe the witnesses' demeanor and assess their credibility. *Id.* After reviewing the record, we see no abuse of discretion in the trial court's decision not to grant relief on this claim.

¶ 36 Finally, Appellant argues that the District Attorney committed prosecutorial misconduct by presenting perjured testimony at trial. The alleged perjury came from the Commonwealth's expert, Dr. Robert F. Foery. According to Appellant, Dr. Foery lied at trial when he said that he issued no pre-trial opinion to the prosecutor about Appellant's BAC. N.T., 12/18/2002, at 187. Appellant further argues that a letter from the prosecutor dated December 13, 2002 (four days

before trial) showed that the prosecutor expected Dr. Foery to testify that Appellant had a BAC of .12% at the time of driving.

¶ 37 Even assuming *arguendo* that Dr. Foery did give a pretrial opinion to the prosecution, Appellant's claim would fail. First, the prosecution did not elicit the testimony at issue; rather, it came out through cross-examination by Attorney Hoey. N.T., 12/18/2002, at 187. More importantly, however, Appellant fails to demonstrate prejudice. The record reflects that Dr. Foery did not give any opinion at trial as to what Appellant's BAC level was at the time of driving. Moreover, Dr. Foery clarified that the prosecution did not ask him to issue such an opinion at trial. N.T., 12/18/2002, at 190. Rather, Dr. Foery's testimony was limited to a general discussion of how alcohol could affect a human being. *Id.* Dr. Foery also answered a few hypothetical questions related to Appellant's defense: namely, the effect of breath fresheners on BAC levels, and the effect of having three beers three hours before driving (as Appellant claimed on the night in question). *Id.* at 171, 191–200. Ultimately, however, the Commonwealth relied entirely on the permissible inference set forth in § 3731(a.1), and not on expert testimony, to establish Appellant's BAC at the time of driving. Appellant could not have been prejudiced by this series of events. Appellant's final claim fails.

¶ 38 Judgment of sentence affirmed.

¶ 39 ORIE MELVIN, J.: Concurs in Result.

---

7. While styled as a "motion for judgment of acquittal" based on perjured testimony, Appellant arguably raised a weight of the evidence claim in post-sentence motions. As noted above, the trial court denied these motions.