J-S60029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT LEE LOMAX | |
| Appellant | No. 46 MDA 2014 |

Appeal from the Judgment of Sentence entered August 20, 2013
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-CR-0002145-2012

BEFORE:  OTT, STABILE, and JENKINS, JJ.

MEMORANDUM BY STABILE, J.:          **FILED DECEMBER 22, 2014**

Appellant, Robert Lee Lomax, appeals from the judgment of sentence of the Court of Common Pleas of Cumberland County entered August 20, 2013.  Appellant argues the trial court erred in denying his motion to suppress evidence.  Appellant also argues the verdict is against the weight of the evidence.  For the reasons stated below, we affirm.

The trial court summarized the facts leading to Appellant's arrest as follows:[1]

_____

[1] These are the factual findings made by the suppression court.  In its Rule 1925(a) opinion, the trial court, in summarizing the facts of the case, relied on the evidence offered at trial.  In its Rule 1925(a) opinion, the trial court did not address the suppression claim but referred to the opinion issued in connection with the denial of the suppression motion.  It is worth mentioning that, for cases in which the suppression hearing occurs after October 30, 2013, the scope of review of a suppression order encompasses only the record adduced at the suppression hearing.  ***In the Interest of L.J.***, 79

*(Footnote Continued Next Page)*

On June 9, 2012, at approximately 2:30 A.M., Officer Lane Pryor of the Camp Hill Police Department, who was on patrol, noticed a car occupied by two individuals off to the side of the road. The car was parked in a residential neighborhood. It did not have any headlights on and was not running. He testified that there was no other traffic or occupied cars on the road at that time. Officer Pryor pulled alongside the car to do a safety check of the individuals inside the car. Officer Pryor activated his overhead lights to reassure the vehicle's occupants of his identity. As he did so, he noticed the two individuals inside the vehicle kiss each other. The passenger, [Appellant], then exited the car.

Officer Pryor approached the parked car on foot to speak with the driver who was still in the car. As Officer Pryor approached, the driver put the car in drive. Officer Pryor was able to get her attention to indicate he was there and she placed the car back in park. At that time, [Appellant], who was already outside the vehicle, became nervous, told Officer Pryor that he was walking home to Logan Street in Camp Hill, that Logan Street was closed and that he had identification. Officer Pryor did not engage with [Appellant], but instead began speaking with the driver. Officer Pryor testified that while he did so, [Appellant] was yelling, flailing his arms around and kept trying to distract Officer Pryor's attention by attempting to hand Officer Pryor his identification across the roof of the car from the passenger side. Officer Pryor testified that he stopped talking with the driver and told [Appellant] that, "I'll be with [you] in just a minute."

Officer Pryor knew that Logan Street was not closed. He also noted that [Appellant] and driver were parked a few blocks from [Appellant]'s residence, not in front of it. The driver told Officer Pryor that [Appellant] was too drunk to drive and that she was giving him a ride home. The driver did not know the name of [Appellant]. Officer Pryor then spoke with [Appellant] in front of his police cruiser. [Appellant] voluntarily gave Officer Pryor his identification. Officer Pryor ran [Appellant]'s name and found he had an outstanding felony arrest warrant for drug delivery. The driver was later determined to also have a warrant for her

*(Footnote Continued)* ——————————

A.3d 1073, 1088-89 (Pa. 2013). We may examine the entire record here, because the suppression hearing occurred prior to October 30, 2013.

arrest. [At this point, the officer took both the driver and Appellant into custody.]

Trial Court Opinion, 3/4/13, at 1-2.

After the trial court denied his motion to suppress evidence, a jury convicted Appellant of five drug-related offenses. Appellant was sentenced accordingly. The trial court denied Appellant's motion for modification of sentence. This appeal followed.

Appellant raises two issues for our review:

I.    Whether the suppression court erred in denying the Appellant's motion to suppress evidence when the officer's interaction went beyond a mere encounter for a welfare check, to that of an investigatory stop without reasonable suspicion.

II.   Whether the guilty verdict for possession with intent to deliver a schedule II controlled substance was so against the weight of the evidence as to shock the conscience of the court.

Appellant's Brief at i.

We review an order denying a motion to suppress as follows:

In addressing a challenge to a trial court's denial of a suppression motion, we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as [] remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Scarborough***, 89 A.3d 679, 683 (Pa. Super. 2014) (quotation omitted).

- 3 -

Additionally, regarding the specific issue before us, *i.e.*, whether the initial interaction between the officer and Appellant was a mere encounter or an investigative detention, we apply the following standard:

> To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Collins*, 950 A.2d 1041, 1046-47 (Pa. Super. 2008) (citation omitted).

In his brief, Appellant mentions several cases, but mostly relies on *Commonwealth v Hill*, 874 A.2d 1214 (Pa. Super. 2005), and *Commonwealth v. Fuller*, 940 A.2d 476 (Pa. Super. 2007), for the proposition that an officer's showing of authority (*i.e.*, turning overhead lights on), where there is no reason to believe assistance is needed by the motorist, transforms the interaction from a mere encounter to an investigatory stop. Specifically, Appellant argues that given the vehicle in question had no visible signs of distress, the officer's turning on the overhead lights of his patrol vehicle constituted a seizure of the vehicle and its occupants, which was required to be supported by reasonable suspicion

- 4 -

to be lawful. Because the officer lacked reasonable suspicion to seize the vehicle and occupants, the evidence gathered following the seizure must be suppressed. We disagree. Appellant ignores important facts that bear upon a totality of circumstances analysis. Appellant also misconstrues relevant case law.

Regarding the facts, Appellant does not mention the vehicle was parked in a residential neighborhood in the early hours of the morning. "Because this was **atypical** for the time and place, [the officer] approached [the vehicle] to do a safety check of the individuals in the car to see if everything was alright." Trial Court Opinion, 3/4/13, at 3 (emphasis added). Appellant does not mention that when the officer turned the overhead lights on, the vehicle was already stopped. *Id.* at 1, 4. In other words, the officer did not pull the vehicle over. Appellant does not mention the officer did not stop the vehicle when the driver put the car in drive, but the driver stopped the vehicle when the driver realized the officer was approaching. *Id.* at 1. Appellant does not mention that, at the time the officer approached the vehicle, Appellant was no longer in the car and that the officer did not ask or order him not to leave; *id.* at 4, in fact, the officer ignored Appellant. *Id.* at 1. Appellant does not mention that Appellant, in an attempt to distract the officer, who was interacting with driver, tried to engage the officer offering to show his identification card. *Id.* at 1, 4. Appellant does not mention that he stated he was leaving on foot to go home. *Id.* at 1. He, however,

decided to stay to pursue his goal to distract the officer. *Id.* at 1, 4. Again, the officer did not stop or otherwise prevent him from leaving the scene. *Id.* at 4. More specifically, the suppression court found:

> In the case *sub judice*, the car Officer Pryor approached was already parked. [Appellant] was already outside the car. Officer Pryor approached the car to speak with the driver. Officer Pryor made no request of [Appellant]. [Appellant] sought to engage Officer Pryor by volunteering information and his identification. Officer Pryor did not retain nor request [Appellant]'s identification. [Appellant] could have walked away at any point but chose to stay in an effort to distract the officer. Later, after Officer Pryor had spoken with the driver, [Appellant] voluntarily gave Officer Pryor his identification. At no point did Officer Pryor tell [Appellant] that he was not free to leave or order him to stay where he was located. [Appellant]'s movements were in no way restricted.

Trial Court Opinion, 3/4/13, at 3-4.

With this factual background in mind, we now address the legal issue before us. Appellant suggests the use of overhead lights, when approaching a motorist who is not in apparent distress, constitutes a seizure, which must be supported by reasonable suspicion. Appellant's Brief at 16 (discussing **Hill**, **Fuller**). While Appellant discusses additional cases (**Commonwealth v. Kendall**, 976 A.2d 503 (Pa. Super. 2009), **Collins**, **supra**, and **Commonwealth v. Conte**, 932 A.2d 690 (Pa. Super. 2007) (distinguishing them from the instant matter)), he fails to mention **Commonwealth v. Johonoson**, 844 A.2d 556 (Pa. Super. 2004). **Johonoson** severely undermines Appellant's argument about the legal consequences deriving from the use of overhead lights. On several occasions this Court has stated

that "triggering emergency lights or initiating interaction with a driver does not necessarily shift the interaction between an officer and a driver from a mere encounter to an investigatory detention." **Kendall**, 976 A.2d at 505 (citing **Johonoson**, **Collins**, and **Conte**).

Whether there is a seizure depends on the totality of the circumstances. In **Johonoson**, we noted:

> Critical to our determination is the fact that [a]ppellant pulled off the road voluntarily and came to a full stop on the side of the road without any prompting from Trooper Perloff. Trooper Perloff then parked behind [a]ppellant's vehicle, activated his overhead lights, and approached [a]ppellant to see if he could be of assistance. Trooper Perloff did not stop [a]ppellant's vehicle.
>
> Appellant relies almost exclusively on Trooper Perloff's flashing lights as a signal that he was "not free to leave," thus making the interaction an investigative detention. We recognize that flashing overhead lights, **when used to pull a vehicle over,** are a strong signal that a police officer is stopping a vehicle and that the driver is not free to terminate this encounter. The same is not necessarily true under the factual circumstances presented here. It is one traditional function of State Troopers, and indeed all police officers patrolling our highways, to help motorists who are stranded or who may otherwise need assistance. Such assistance is to be expected, and is generally considered welcome.
>
> Often, and particularly at night, there is simply no way to render this aid safely without first activating the police cruiser's overhead lights. This act serves several functions, including avoiding a collision on the highway, and potentially calling additional aid to the scene. Moreover, by activating the overhead lights, the officer signals to the motorist that it is actually a police officer (rather than a potentially dangerous stranger) who is approaching.

**Johonoson**, 844 A.2d at 562 (footnote omitted) (emphasis in original).

Here, the trial court found the time and location where the officer saw the vehicle (*i.e.*, 2:30 a.m. in a residential area) was "atypical." In fact, the officer decided "to do a safety check of the individuals inside the car," Trial Court Opinion, 3/4/13, at 1, because "[t]hat's not something you see on every patrol shift." N.T. Suppression Hearing, 1/15,13, at 7. The trial court found the officer also "activated his overhead lights to reassure the vehicle's occupants of his identity." Trial Court Opinion, 3/4/13, at 1. Finally, the trial court found the vehicle was already stopped when the overhead lights were activated. In other words, the officer did not pull the vehicle over. Thus, in light of the foregoing, and like ***Johonoson***, the evidence introduced at the suppression hearing shows that a reasonable person in Appellant's position would have understood the officer's arrival as an act of assistance, not the start of an investigative detention.

Absence of outward signs of the vehicle being in distress does not bar an officer from conducting a safety check. In ***Collins***, we noted:

> The record indicates for example, that Trooper Walton parked twenty feet away from the rear of the vehicle. . . . The vehicle in question was not obstructing traffic or in violation of any traffic regulations. Although people parked at this location regularly, they did not do so as frequently after dark. Thus, Trooper Walton was concerned enough to check on the condition of the vehicle and safety of its occupants. Moreover, Trooper Walton testified that no outward sign of distress emanated from the vehicle, and he did not observe anything that would lead him to believe that illegal activity was occurring. Further, Trooper Walton explained on cross-examination that the occupants were not scrambling around as if they were trying to get away because a state trooper was approaching them. Instead, Trooper Walton approached the vehicle requesting information,

asked if "everyone was ok" and then [a]ppellee blurted out that they were smoking marijuana. Trooper Walton at that point smelled burnt marijuana and observed the bong in the vehicle.

*Collins*, 950 A.2d at 1047 (footnote and citations to record omitted).

Appellant argues the instant case is distinguishable from *Collins*. Specifically, Appellant notes that in *Collins*, but not here, "the car's unusual location at an unusual hour was a strong factor in determining if there was reason to believe the car may need assistance." Appellant's Brief at 18. Appellant then concluded that the instant matter differs from *Collins* because here "the car was parked on the side of a residential road, which is not uncommon, and the officer witnessed what he testified he thought was a goodbye between the two passengers." *Id.* at 18-19.

It is worth noting the trial court here, as in *Collins*, found that the location and the hour for a car being parked in that area was "atypical" even though there were no outward signs of distress emanating from the vehicle. The record here, therefore, does not support Appellant's contention. Additionally, the mere fact a vehicle is parked in a residential area does not mean that the vehicle may not be in need of assistance. Appellant provides no authority to the contrary, nor can we find any.

Regarding *Conte*, Appellant argues the case is distinguishable because the car was parked in a residential area and the vehicle did not create safety concerns as in *Conte* (vehicle was parked on ramp). Again, the mere fact a vehicle is parked in a residential area does not rule out the vehicle may not

be in need of assistance. Similarly, the fact vehicle did not create any safety risks is not dispositive of whether a police officer may conduct a safety check. **See Collins**, **supra**.

Appellant also distinguishes this matter from **Kendall** because in **Kendall**, but not here, the vehicle was damaged, which would have signaled need for assistance. The condition of the car is certainly a circumstance to be considered, but the fact the vehicle has no visible signs of being in distress does not preclude a police officer from conducting a safety check if something is nonetheless amiss. **See Collins**, **supra**.

More importantly, Appellant fails to reconcile **Hill** and **Fuller** with other cases where this Court did not find the interaction to be an investigatory stop. We did so in **Kendall**. Therein we noted:

> It is true that there are cases where the trial court found that the stop was not just a mere encounter to render assistance, and the officer needed reasonable suspicion of criminal activity to detain a vehicle. In those cases, it was found that the driver would not reasonably believe he or she was free to leave or terminate the encounter with the officer. The activation of the officer's emergency lights when the officer is approaching the driver's vehicle may be a factor in what a reasonable driver would believe. Therefore, there would be record support for a trial court finding that the interaction between the officer and the driver amounts to an investigatory detention which requires reasonable suspicion.
>
> These are fact-sensitive situations and in general we must defer to the trial court determination. The cases that hold there *was* an investigative detention are distinguishable from this case, particularly because the trial court did not agree that the stop was to render assistance. [This Court then discussed **Hill** and **Fuller**]. . . .

- 10 -

. . . .

While we have held that the applicable standard in determining whether an interaction rises to the level of an investigative detention hinges on whether "a reasonable person believe[s] he was not free to go and was subject to the officer's orders," this should not be the only standard in situations like the one at hand. *Cf. Fuller*, 940 A.2d at 479. It has been suggested in the case law that this determination might turn on whether the driver had reason to believe that the officer is simply carrying out his duty to render aid. The ultimate decision is one the suppression judge must make after hearing all of the testimony and determining the credibility of the witnesses. Whether the *officer* believes the driver is free to leave is not the determining factor, and neither is the use of hazard lights before pulling over.

. . . .

In cases where a driver pulls over for an unknown reason, the officer must not be restrained from investigating the situation to assess whether help is needed. If the investigation occurs at night, it is reasonable for an officer to activate overhead lights to ensure his or her own safety as well as the safety of the driver, and to notify passing vehicles of their presence. A driver's unusual behavior is enough of a reason for an officer to stop, assess the situation, and determine whether the driver is in need of assistance.

Certainly an officer would realize that there might be a variety of reasons for unusual behavior by a driver which could include driving under the influence of drugs or alcohol. However, merely because the officer considers drunk driving as one alternative does not mean he is precluded from trying to aid a citizen if he also thinks the driver might be in distress. This decision must in the first instance be made by the trial judge and should not be upset unless the record does not support the trial judge's findings.

*Kendall*, 976 A.2d at 507-09 (emphasis in original).

Here, as in *Kendall*, the suppression court, considering the totality of circumstances, concluded the officer approached the vehicle to conduct a

- 11 -

safety check. Here, as in **Kendall**, nothing in the record suggests otherwise. Accordingly, the trial court did not err in denying Appellant's motion to suppress evidence.

Appellant next argues the verdict is against the weight of the evidence. The claim, however, is waived. A claim that a verdict is against the weight of the evidence must be raised in a motion for a new trial either (1) orally on the record, before sentencing; (2) in a written-presentence motion; or (3) in a post-sentence motion. Pa.R.Crim.P. 607(A). Failure to properly preserve the claim results in waiver, even if the trial court addresses the weight of the evidence in its opinion. **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (quoting **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012)). It is axiomatic that a party cannot raise an issue for the first time on appeal. **See** Pa.R.A.P. 302(a).

Appellant failed to provide any indication on how and when he raised and preserved the issue for our review. Accordingly, the weight of the evidence claim is waived. **See** Pa.R.A.P. 2117(c), 2119(e); **see also Commonwealth v. Williams**, 980 A.2d 667, 671 (Pa. Super. 2009).[2]

---

[2] In **Williams**, we noted:

> Pursuant to the Rules of Appellate Procedure, Appellant must specify where in the record this issue was preserved. **See** Pa.R.A.P. 2117(c) and 2119(e). In his brief, [a]ppellant does

*(Footnote Continued Next Page)*

Additionally, "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." ***Commonwealth v. Baker***, 963 A.2d 495, 502 n.6 (Pa. Super. 2008). At any rate, upon review of the record it appears that Appellant did not raise the claim in a motion with the trial court as required under Pa.R.Crim.P. 607(A). It appears Appellant raised the claim for the first time in his Rule 1925(b) statement, which is insufficient for preserving it for appellate review. ***See Commonwealth v. Sherwood***, 982 A.2d 483 (Pa. 2009).[3]

Judgment of sentence affirmed.

*(Footnote Continued)* ───────────────

not indicate where the issue was preserved in the trial court, nor does he even allege that he raised the issue[.] Consequently, we are constrained to deem this issue waived. ***See*** Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

***Williams***, 980 A.2d at 671.

[3] In ***Sherwood***, the Supreme Court noted:

Regarding [a]ppellant's weight of the evidence claim[,] we note that [a]ppellant did not make a motion raising a weight of the evidence claim before the trial court as the Pennsylvania Rules of Criminal Procedure require. ***See*** Pa.R.Crim.P. 607(A). The fact that Appellant included an issue challenging the verdict on weight of the evidence grounds in his 1925(b) statement and the trial court addressed [a]ppellant's weight claim in its Pa.R.A.P 1925(a) opinion did not preserve his weight of the evidence claim for appellate review in the absence of an earlier motion.

***Sherwood***, 982 A.2d at 484 (footnote omitted).

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2014