J-S63024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                    :   PENNSYLVANIA
                                    :
        v.                       :
                                    :
                                    :
REBECCA LYNN THIMONS         :
                                    :
           Appellant        :   No. 396 WDA 2018

Appeal from the Judgment of Sentence March 8, 2018
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0002708-2016

BEFORE:  OTT, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                **FILED OCTOBER 26, 2018**

Rebecca Lynn Thimons (Appellant) appeals from the judgment of
sentence imposed following her convictions of driving under the influence of
alcohol (DUI) – general impairment, DUI – highest rate of alcohol, driving
while operating privilege is suspended or revoked, and driving with an open
alcoholic beverage container.[1]  Appellant challenges the trial court's denial of
her pre-trial suppression motion.   After careful consideration, we vacate
Appellant's judgment of sentence, reverse the order denying her suppression
motion, and remand for further proceedings.

The trial court summarized the facts underlying Appellant's arrest as
follows:

> Officer [Christopher] Kopas [(Officer Kopas)] testified that on
> November 6, 2016, at approximately 1:09 a.m., he was checking

---

[1] 75 Pa.C.S.A. §§ 3801(a)(1), (c), 1543(b)(1.1)(i), 3809(a).

---

* Former Justice specially assigned to the Superior Court.

the businesses located on Sharberry Lane in Adams Township. He defined a business check as looking for suspicious activity in and around businesses that are closed for the day. After Officer Kopas completed a business check of Luciano's restaurant, he continued west on Sharberry Lane to the Lightening Bug business when he observed a gold Buick SUV traveling north from behind the back of the business. As the officer entered the Lightening Bug parking lot, the gold SUV turned towards the front of the building and into a parking space. Officer Kopas decided to check on the well-being of the SUV driver and pulled into a parking space behind the SUV. Officer Kopas activated the red and blue cruise lighting system. He was patrolling alone that day and informed dispatch of his location. He approached the SUV and while talking with the driver, [Appellant], he detected indications of alcoholic beverage ingestion and impairment. Officer Kopas asked for her driver's license to which [Appellant] replied that she did not have her license. Officer Kopas asked [Appellant] for her name and date of birth. In the meantime, Officer Jason Giallorenzo arrived as backup assistance and informed Officer Kopas that [Appellant] was a DUI[-]suspended driver.

Officer Kopas testified that during this interaction, he was standing next to the open window of [Appellant]'s driver's door. He stated that he parked the police car in a space behind [Appellant]'s SUV and that she was not blocked in. Next, [Appellant] performed three (3) standardized field sobriety tests, the horizontal gaze nystagmus (HGN), the walk and turn, and the one-leg stand. The results of the HGN were inconclusive and the other two tests indicated impairment. The PBT (portable breath test) indicated alcohol consumption. [Appellant] was placed under arrest for suspicion of driving under the influence and asked to submit to a blood test. [Appellant] said sure. [Appellant] was transported to UPMC Cranberry for a blood draw. Officer Kopas testified that because [Appellant] consented to the blood test, he did not present nor read the information contained in the Penn DOT DL-26 form. At the hospital, [Appellant] was presented with the UPMC consent form, [Appellant]' Exhibit "A," which was signed by [Appellant] indicating that she consented to the blood draw.

Memorandum Opinion and Order, 8/11/17, at 2.

On December 1, 2016, the Commonwealth filed a criminal complaint charging Appellant with (DUI) – general impairment, DUI – highest rate of

alcohol, driving while operating privilege is suspended or revoked, and driving with an open alcoholic beverage container. On May 22, 2017, Appellant filed a pre-trial motion to suppress. Appellant alleged that Officer Kopas conducted an investigatory detention and lacked the reasonable suspicion necessary to do so. Additionally, Appellant asserted that the evidence obtained from her blood draw was inadmissible because the police did not inform her of her right to refuse a warrantless blood draw. On June 16, 2017, the trial court held a hearing on Appellant's suppression motion. On August 11, 2017, the trial court denied the motion.

On January 26, 2018, the trial court found Appellant guilty of all charges. On March 8, 2018, the trial court sentenced Appellant to 60 months of intermediate punishment, with the first 90 days to be served on house arrest, a consecutive term of 90 days of electronic monitoring, and a 12-month license suspension. The following day, Appellant timely appealed to this Court. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents the following issues for review:

1. WHETHER THE TRIAL COURT ERRED, AS A MATTER OF LAW, WHEN IT DENIED APPELLANT'S OMNIBUS PRE[-]TRIAL MOTION CHALLENGING THE LEGALITY OF HER TRAFFIC STOP AND SUBSEQUENT DETENTION BY LAW ENFORCEMENT?

2. WHETHER THE TRIAL COURT ERRED, AS A MATTER OF LAW, WHEN IT DENIED APPELLANT'S OMNIBUS PRE[-]TRIAL MOTION CHALLENGING THE LEGALITY OF HER BLOOD DRAW BASED UPON LACK OF KNOWING CONSENT?

Appellant's Brief at 8.

Our standard of review is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Mason*, 130 A.3d 148, 151-52 (Pa. Super. 2015) (quotations and citations omitted).

First, Appellant argues that her traffic stop was illegal. Appellant asserts that her traffic stop was an investigatory detention, as opposed to a mere encounter, because Officer Kopas pulled his patrol vehicle behind her car and activated the vehicle's lights. Appellant maintains that the activation of the police vehicle's lights indicated that she was detained for purposes of the Fourth Amendment. Consequently, Appellant contends that because he was unable to articulate at the suppression hearing any specific facts indicating that she was involved in criminal activity, Officer Kopas lacked the reasonable suspicion necessary to conduct an investigatory detention. In response, the

Commonwealth argues that Officer Kopas had reasonable suspicion to stop Appellant's vehicle.

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa. Super. 2007). Courts in this Commonwealth have recognized three types of interactions between the police and a citizen: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

*Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017).

This Court has explained that when determining whether an interaction is a mere encounter or an investigative detention:

> the focus of our inquiry is on whether a seizure of the person has occurred. Within this context, our courts employ the following objective standard to discern whether a person has been seized: [w]hether, under all the circumstances surrounding the incident

- 5 -

at issue, a reasonable person would believe he was free to leave. Thus, a seizure does not occur simply because a police officer approaches an individual and asks a few questions.

**Commonwealth v. Cooper**, 994 A.2d 589, 592 (Pa. Super. 2010) (citations, quotation marks, and ellipses omitted).

In support of her claim that the traffic stop was an investigatory detention and not a mere encounter, Appellant relies on our Supreme Court's decision in **Commonwealth v. Livingstone**, 174 A.3d 609 (Pa. 2017), which the Supreme Court decided approximately three months after the trial court's denial of Appellant's suppression motion in this case. In **Livingstone**, the Supreme Court held that the activation of a police car's lights upon pulling alongside a vehicle indicated that the individuals inside the vehicle were "seized and subjected to an investigative detention." **Id.** at 625.

In so holding, our Supreme Court explained:

To determine whether a citizen's movement has been restrained, courts must consider the totality of the circumstances, "with no single factor dictating the ultimate conclusion as to whether a seizure has occurred." [**Commonwealth v. Strickler**, 757 A.2d 884, 890 (Pa. 2000)]. In [**United States v. Mendenhall**, 446 U.S. 544 (1980)], the high Court indicated that the following factors suggest a seizure occurred: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." [**Id.**] at 554[.] The Court explained that, absent evidence of the factors identified above, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." **Id.** at 555[.]

Similarly, in **Commonwealth v. Jones**, this Court explained that, in order to determine when a "stop" has occurred, "subtle

- 6 -

factors as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements," must be considered. []378 A.2d 835, 839-40 (1977) (recognizing that, while a police uniform is a symbol of authority, a uniform is not, in and of itself, a sufficient exercise of force to render an interaction between an officer and a citizen a "stop"). The pivotal inquiry is whether, in light of the facts and circumstances identified above, "a reasonable man, innocent of any crime, would have thought (he was being restrained) had he been in the defendant's shoes." *Id.* at 840 (citation omitted). The *Jones*/*Mendenhall* standard has been consistently followed in Pennsylvania in determining whether the conduct of the police amounts to a seizure, or whether there is simply a mere encounter between citizen and police officer. *Commonwealth v. Matos*, [] 672 A.2d 769, 774 ([Pa.] 1996).

It is undeniable that emergency lights on police vehicles in this Commonwealth serve important safety purposes, including ensuring that the police vehicle is visible to traffic, and signaling to a stopped motorist that it is a police officer, as opposed to a potentially dangerous stranger, who is approaching. *See* [*Commonwealth v. Johonoson*, 844 A.2d 556, 562 (Pa. Super. 2004)]. Moreover, we do not doubt that a reasonable person may recognize that a police officer might activate his vehicle's emergency lights for safety purposes, as opposed to a command to stop. Nevertheless, upon consideration of the realities of everyday life, particularly the relationship between ordinary citizens and law enforcement, we simply cannot pretend that a reasonable person, innocent of any crime, would not interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave.

Indeed, the Pennsylvania Driver's Manual ("PDM") instructs drivers how to proceed "if [they] are stopped by police." The PDM first provides: "You will know a police officer wants you to pull over when he or she activates the flashing red and blue lights on top of the police vehicle." Pa. Driver's Manual at 78, available at http://www.dot.state.pa.us/Public/DVSPubsForms/BDL/BDLManu als. The PDM further "recommends" that drivers follow certain procedures "[a]nytime a police vehicle stops behind you." *Id*. Those procedures include turning off the engine and radio, rolling down a window to enable communication with the officer, limiting their movements and the movements of passengers; placing their

- 7 -

hands on the steering wheel; keeping the vehicle doors closed and remaining inside the vehicle; and keeping their seatbelt fastened. *Id*. If these instructions do not explicitly instruct motorists who are already stopped on the side of the road that they are not free to leave when a police vehicle, with its emergency lights activated, pulls alongside their vehicle, we conclude that it is eminently reasonable that a motorist would believe he or she is not free to leave under these circumstances.

Moreover, pursuant to Pennsylvania's Motor Vehicle Code, a driver of a motor vehicle "who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop," may be convicted of a second-degree misdemeanor. 75 Pa.C.S. § 3733(a), (a.2). A police officer's signal may be "by hand, voice, emergency lights or siren." *Id*. § 3733(b).

\* \* \*

The fact that motorists risk being charged with violations of the Motor Vehicle Code if they incorrectly assume they are free to leave after a patrol car, with its emergency lights activated, has pulled behind or alongside of them, further supports our conclusion that a reasonable person in Appellant's shoes would not have felt free to leave.

*Id.* at 621-22.

Here, there is no dispute that not only did Officer Kopas pull his patrol vehicle behind Appellant's parked car, but he did so with his lights activated. *See* N.T., 6/16/17, at 6. Indeed, the Commonwealth concedes that Appellant's interaction with Officer Kopas was not a mere encounter. Commonwealth's Brief at 3. We therefore conclude that Officer Kopas' stop of Appellant's vehicle constituted an investigatory detention. Accordingly, we must determine whether Officer Kopas possessed reasonable suspicion necessary to stop Appellant's vehicle. *See Cooper*, 994 A.2d at 592.

When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of *Terry v. Ohio*, 392 U.S. 1 (1968), where the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot. *In re: D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). These encounters with police are commonly known as *Terry* stops. In order to prove reasonable suspicion, "the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." *Commonwealth v. Cook*, 735 A.2d 673, 677 (Pa. 1999). "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." *Commonwealth v. Walls*, 53 A.3d 889, 893 (Pa. Super. 2012).

Based on our review of the certified record on appeal, including the transcript of Appellant's suppression hearing, we conclude that there is no evidence to support a finding that Officer Kopas possessed the reasonable suspicion necessary to stop Appellant's vehicle. Officer Kopas explained his decision to stop Appellant's vehicle as follows:

> [Officer Kopas]: After I completed performing a business check of Luciano's Restaurant, I proceeded west on Sharberry Lane. As I'm coming down the hill between that business and what's called the Lightning Bug, which is just, like, a family fun center, like an arcade, I observed a gold Buick Rendezvous SUV traveling north in that parking lot coming from the back side of that business. As I'm proceeding down to the driveway area, or the entrance, that vehicle turns towards the front of the building and pulls into a

parking space. So I check on the well-being of that person and to kind of check the area, if there is anything that anybody would need help with.

Obviously, no one is usually there at 1:09 in the morning, so something may be off. So I did pull into a parking space behind the vehicle.

N.T., 6/16/17, at 5-6.

Officer Kopas' testimony points to no specific or articulable facts indicating that he possessed the reasonable belief that criminality was afoot. Officer Kopas did not identify any crime (*e.g.*, DUI, possession or distribution of controlled substances, burglary, etc.) that he believed Appellant may have committed or may have been in the process of committing. All the record indicates is that at approximately 1:00 a.m., Appellant drove her vehicle behind a closed business and parked her car in an empty parking lot in front of that business. Moreover, the Commonwealth, in its appellate brief, did not identify any crime that Officer Kopas could have reasonably believed Appellant had committed. The Commonwealth only asserts that, because Appellant was in a parking lot late at night in front of a closed business, Officer Kopas "had reason to suspect that something was not right." Commonwealth Brief at 6. This does not amount to reasonable suspicion.

The record reflects that Officer Kopas and Appellant were engaged in a mere encounter:

[Defense Counsel]: So when you came in and you just thought that a car in the lot at that time was an awkward situation for you to encounter, you wanted to do, I think you said, a well-being check, right?

- 10 -

[Officer Kopas]: Yes. With a vehicle coming from the back side of the business, then parking in front of that business at that hour, I wanted to make sure everything was okay.

*    *    *

[Defense Counsel]: And you, at that time you still considered this a welfare check?

[Officer Kopas]: Correct. Yes. It was a mere encounter aspect.

[Defense Counsel]: And then nothing until you reached the driver's side window when you encountered [Appellant]? There was no other indication of anything else occurring, correct?

[Officer Kopas]: No, nothing I had detected.

N.T., 6/6/17, at 15.

Thus, although Officer Kopas may have intended for his interaction with Appellant to begin as a mere encounter, *Livingstone* instructs that a police officer must have reasonable suspicion to approach a parked vehicle with the patrol car's lights activated. Because he did not possess such reasonable suspicion, Officer Kopas' stop of Appellant's vehicle was illegal.

In sum, and consonant with *Livingstone*, we conclude that Officer Kopas' stop of Appellant's vehicle was illegal. Thus, we need not address Appellant's claim that she did not knowingly consent to the blood draw. We therefore vacate Appellant's judgment of sentence, reverse the order denying the suppression motion, and remand for further proceedings.

Judgment of sentence vacated. Suppression order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/2018