**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**David John FULLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 27, 2007.

Filed Dec. 31, 2007.

Philip M. Masorti, State College, for appellant.

John F. Crowley, Asst. Dist. Atty., Wellsboro, for Com., appellee.

BEFORE: TODD, KLEIN, and POPOVICH, JJ.

OPINION BY TODD, J.:

¶ 1 David John Fuller appeals the judgment of sentence imposed by the Tioga County Court of Common Pleas after he

was convicted of driving under the influence of alcohol ("DUI")[1] and related summary offenses. We are constrained to vacate Appellant's judgment of sentence and remand the case for a new trial.

¶2 On May 11, 2006, shortly after midnight, Pennsylvania State Troopers William Hoppel and Thomas Wool were traveling south-bound on Gulick Street in Blossburg Borough when they observed in the distance ahead a pick-up truck driven by Appellant traveling in the same direction. Trooper Hoppel testified that as he and Trooper Wool eventually caught up to the back of the truck, the truck slowed down almost to a complete stop and then pulled off onto the berm of the road. The troopers then pulled their vehicle onto the berm behind Appellant's truck, and activated their emergency lights. When Trooper Hoppel exited the police car and approached Appellant's truck, he noticed that Appellant was not wearing his seatbelt, that his eyes were bloodshot and glassy, and that he smelled of alcohol. Upon Trooper Hoppel's request, Appellant produced his driver's license, but could not find his vehicle registration or insurance card. When asked why he pulled off the roadway, Appellant told Trooper Hoppel "because you guys were behind me." (N.T. Hearing, 8/3/06, at 8.) Trooper Hoppel asked where Appellant was coming from, and he responded that he was coming from a bar. Trooper Hoppel then requested that Appellant perform several field sobriety tests, and when he was unable to do so, Appellant was placed under arrest. A blood test revealed that Appellant had a blood alcohol concentration ("BAC") of .18%.

¶3 Prior to trial, Appellant filed a motion to suppress evidence of his BAC on the basis that the troopers did not have the requisite reasonable suspicion to believe Appellant had committed a motor vehicle code violation and thus conduct a traffic stop. Following a hearing, the trial court denied Appellant's motion, concluding that Appellant was subjected to a mere encounter, not an investigative detention, and, therefore, that the troopers were not required to possess reasonable suspicion of a motor vehicle code violation. Appellant's subsequent motion for reconsideration was denied, and at a nonjury trial, Appellant was found guilty of DUI and related summary offenses. On March 5, 2007, the trial court sentenced Appellant to a term of 90 days to 5 years incarceration. This appeal followed, wherein Appellant argues that the trial court erred in denying his motion to suppress.[2]

¶4 It is well settled that

[w]hen reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the evidence for the defendant, as fairly read in the context of the record as a whole, as remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Ingram*, 814 A.2d 264, 269 (Pa.Super.2002) (citations omitted).

¶5 Our Supreme Court has defined three forms of police-citizen interaction: a mere encounter, an investigative detention, and a custodial detention. *Commonwealth v. Boswell*, 554 Pa. 275,

---

**1.** 75 Pa.C.S.A. § 3802(a)(1) and (c).

**2.** The Commonwealth has not filed a brief in this matter.

284, 721 A.2d 336, 340 (1998). A mere encounter between police and a citizen "need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond." *Commonwealth v. Riley,* 715 A.2d 1131, 1134 (Pa.Super.1998). An investigatory stop, which subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. *See Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A custodial detention is an arrest and must be supported by probable cause. *Id.*

■ ¶ 6 In evaluating whether an interaction rises to the level of an investigative detention, "the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." *Commonwealth v. Stevenson,* 832 A.2d 1123, 1127 (Pa.Super.2003).

¶ 7 In holding that the troopers' interaction with Appellant constituted a mere encounter, as opposed to an investigative detention, the trial court noted that the troopers did not initiate a traffic stop of Appellant, but rather that Appellant pulled off the road on his own accord and that it was reasonable for the troopers to stop and determine whether he was in need of assistance. The trial court further opined that the fact that the troopers activated their emergency lights before Trooper Hoppel exited the police car and approached Appellant's vehicle on foot "does not raise the level of intrusiveness from a mere encounter to an investigative detention." (Trial Court Opinion, 11/1/06, at 5) (citing *Commonwealth v. Johonoson,* 844 A.2d 556 (Pa.Super.2004).)

¶ 8 In *Johonoson,* a police officer observed the appellant on a rural road late at night driving substantially slower than the posted speed limit with his hazard lights flashing. The appellant pulled his vehicle, which had previously been damaged in an accident, off to the side of the road without any prompting by the officer. The officer pulled his car behind the appellant's, activated his overhead lights and noticed severe damage to both sides of the appellant's car. When the officer approached the appellant, he noticed signs of intoxication. Based on his observations, the officer had the appellant perform a field sobriety test, which the appellant failed. The appellant was arrested on DUI charges and prior to trial filed a motion to suppress, wherein he alleged that the roadside stop of his vehicle was an investigative detention which was not supported by reasonable suspicion. The trial court denied the motion as untimely and the defendant was convicted.

¶ 9 On appeal, this Court agreed that the appellant's pretrial motion was untimely, but in *dicta* reached the merits of the motion and held that the initial stop was a mere encounter which did not automatically escalate into an investigative detention when the officer activated his overhead lights, stating:

> It is one traditional function of State Troopers, and indeed all police officers patrolling our highways, to help motorists who are stranded or who may otherwise need assistance. Such assistance is to be expected, and is generally considered welcome.
>
> Often, and particularly at night, there is simply no way to render this aid safely without first activating the police cruiser's overhead lights. This act serves several functions, including avoiding a collision on the highway, and potentially calling additional aid to the scene. Moreover, by activating the overhead lights, the officer signals to the motorist that it is actually a police officer (rather than a potentially dangerous stranger) who is approaching.

*Id.* at 562. We further held that the encounter did not become an investigative detention until the officer and the appellant came "face to face," at which point the officer's observation, from "a lawful vantage point," of signs of intoxication provided probable cause to believe that the appellant had committed a DUI. *Id.* at 563.

¶ 10 In *Commonwealth v. Hill*, 874 A.2d 1214 (Pa.Super.2005), however, a case factually indistinguishable from the case *sub judice*, this Court concluded that the appellee's interaction with police officers was more than a mere encounter and constituted an investigative detention that required reasonable suspicion on the part of the police officers. Therein, two officers were traveling behind the appellee's pick-up truck late at night. When the officers' car was approximately nine car lengths behind the appellee's, the appellee pulled over to side of the road and stopped. At that point, the officers pulled behind the appellee's truck, activated their overhead flashing lights, and "approached the truck to ascertain whether Appellee needed assistance." *Id.* at 1216. One of the officers detected the odor of alcohol on the appellee, and following a brief investigation, the appellee was arrested for DUI.

¶ 11 The appellee filed a motion to suppress, which the trial court granted after finding that the appellee had not committed any traffic violations and was not doing anything that would lead the police officers to believe that he needed assistance, other than pulling off the road. The Commonwealth appealed, and, citing *Johonoson, supra*, argued that the trial court erred in determining that the officers effectuated a seizure when they activated their overhead lights prior to approaching the appellee's truck. In affirming the trial court's suppression order, this Court stated:

> The Commonwealth's reliance on *Johonoson* is misplaced. Unlike the driver in that case, who was traveling well below the speed limit on a rural road at 3:00 a.m. with his hazard lights activated, Appellee did nothing more than pull his truck to the side of the road in an effort to allow another motorist to pass. Appellee had no reason to expect that a police officer would stop to render aid. Indeed, Appellee testified that when the oncoming vehicle pulled in behind him, he considered leaving until Trooper Koebley activated his overhead flashing lights.
>
> More importantly, however, Officer Nuhfer conceded on cross-examination that Appellee was not free to terminate the encounter once Trooper Koebley activated his overhead lights, stating, "Once the emergency lights were activated ... [Appellee] would have been required to stay stopped." ... Hence, the record fully supports the suppression court's determination that the initial interaction amounted to a seizure rather than a mere encounter.

*Hill*, 874 A.2d at 1219 (record citation omitted); *cf. Commonwealth v. Conte*, 931 A.2d 690 (Pa.Super.2007) (holding that interaction between appellant and police officer, who, after receiving a radio dispatch of a possible disabled vehicle, drove to the scene, pulled beside appellant's vehicle and activated his overhead lights, began as a mere encounter where the appellant exited his vehicle and responded to the officer's inquiry as to what had happened).

█ ¶ 12 Like the appellee in *Hill*, Appellant did not engage in any conduct that would suggest to the police that he needed assistance. He was not driving significantly or unusually below the speed limit, and did not have his hazard lights on, as did the appellant in *Johonoson*. Indeed, Trooper Hoppel testified that the officers did not pull behind Appellant because of

any observed motor vehicle violation, but rather because "we didn't know what the situation was, what was going on." (N.T. Hearing, 8/3/06, at 27.) Furthermore, like the case in *Hill,* when Trooper Hoppel was asked whether he believed that the activation of the overhead emergency lights on his police vehicle "was a signal for the motorist to stay there and that he would not be free to leave at that point in time," Trooper Hoppel responded "I would agree that [the motorist] would probably interpret it that way." (*Id.* at 32.)

¶ 13 In accordance with *Hill,* we conclude that Appellant was subjected to an investigatory detention, which must have been supported by a reasonable suspicion of criminal activity. In that Trooper Hoppel failed to articulate facts that would establish a reasonable suspicion of criminal activity, we find that the detention was invalid, and that the evidence obtained as a result thereof should have been suppressed. Accordingly, we are constrained to vacate Appellant's judgment of sentence and remand this matter for a new trial with instructions that Appellant's motion to suppress be granted.

¶ 14 Judgment of sentence **VACATED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**

¶ 15 Klein, J. files a Dissenting Opinion.

## DISSENTING OPINION BY KLEIN, J.:

¶ 1 After reviewing the record, I reach a different conclusion than the majority regarding whether the police possessed a reasonable suspicion sufficient to support the interaction between the State Police and Fuller.

¶ 2 At about midnight, May 11, 2006, Troopers Hoppel (passenger) and Wool (driver) were on patrol in Blossburg Borough when they spotted a blue Chevy S–10 pick-up truck traveling slowly on Gulick Street. Although there was no testimony as to just how fast the pick-up truck was traveling, Trooper Hoppel noted that they closed in on the truck without having to exceed the speed limit themselves. As the Troopers approached the truck, it came to a near stop in the middle of the traffic lane and then pulled off the road without signaling. Although the Troopers recognized that pulling off the road without signaling was a traffic violation, they were more concerned with the odd nature of the behavior of the truck. The Troopers pulled in behind the truck, at least in part, because they wanted to see if there were any problems with the driver.

¶ 3 The facts in this matter are problematic in that as much as anything it appears that the police had mixed motives for initiating contact with Fuller. While the police may not have initiated contact with Fuller solely because of the traffic violation, the facts remain that the police were aware of the infraction, the police cited the infraction in the affidavit of probable cause, the infraction occurred prior to any personal contact with Fuller, the police cited Fuller for the infraction, and the trial court convicted Fuller of the infraction.

¶ 4 I also note that the trial court does not classify the infraction as a pretext. Fuller does not challenge the infraction as a pretext. Although Fuller challenged the infraction at the trial level on a factual basis, he does not challenge the propriety of the conviction before our Court.

¶ 5 The majority notes that Trooper Hoppel denied using the traffic infraction as a reason to pull over behind Fuller truck. Indeed, Trooper Hoppel did testify that the infraction was not the sole reason for investigating. One exchange between defense counsel and Trooper Hoppel is recounted:

> Question: And then you and the other Trooper initiated a traffic stop as a result of that Motor Vehicle Code violation

which occurred in your presence; is that true?

Trooper Hoppel: No, we didn't pull in behind him because he didn't use his turn signal; we pulled in behind him because we didn't know what the situation was, what was going on.

Question: So you—

Trooper Hoppel: We observed the violation, but that's not why we pulled in behind him.

Question: So two trained Pennsylvania State Troopers on patrol in Blossburg at midnight observe a Motor Vehicle Code violation and that's not the reason you pulled in behind him?

Trooper Hoppel: This specific incident, yeah, that's not the reason why we pulled in behind him is just because he didn't use his turn signal. We pulled in behind him, because, like I said, as we approached and he almost came to a stop in the road, we thought that that wasn't a normal act, that was suspicious—

Question: Okay.

Trooper Hoppel:—and that there might be something going on there, something might be wrong, and that's why we pulled in behind him.

N.T. Suppression Hearing, 8/3/06, at 27–28.

¶ 6 In addition to the above quoted evidence, defense counsel stipulated to the evidence in the affidavit of probable cause in lieu of Trooper Hoppel's direct testimony. Therefore, because the affidavit of probable cause recounts the observed traffic violation prior to the stop, I would accept that traffic violation was at least part of the equation in this matter. This interpretation is supported by the Trooper's testimony that they did not pull over "just because" of the traffic violation and by the Trooper's recognition that a traffic violation had been observed. The use of the phrase "just because" indicates that the traffic violation was a factor in deciding to pull over and investigate.

¶ 7 Finally, the trial court actually convicted Fuller of the predicate traffic violation. Fuller was not simply convicted of summary offenses related to the DUI, he was convicted of a traffic violation that took place before the Troopers pulled in behind the pick-up truck and had any contact with Fuller.

¶ 8 I find it very difficult to state that there was no reasonable suspicion to investigate where the defendant has been convicted of a traffic offense that not only provides for a reasonable suspicion, but absolutely demonstrates the existence of probable cause. While I understand the majority's reluctance to credit this conviction due to the Trooper's equivocal testimony,[3] I believe that we must accept the Trooper's testimony in the light most favorable to the Commonwealth, which includes the affidavit of probable cause listing the traffic violation as well as the Trooper's statement that they did not pull over "just because" of the traffic violation.[4] The testimony of the Trooper, the realization that neither the trial court nor the defense has called the traffic violation a pretext, the fact that the defense is not challenging the validity of the conviction for the traffic offense, and the knowledge that we may affirm a decision if any grounds for affirmance exists, *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435,

---

**3.** The testimony seems particularly strange because the Trooper clearly states that there was probable cause to make a traffic stop or to stop and investigate, but the Trooper then partially backs away from that probable cause.

**4.** It bears remembering that the defense stipulated to the affidavit of probable cause during the Trooper's direct testimony.

438 n. 5 (1975), leads me to conclude that there was sufficient reasonable suspicion to pull in behind the Fuller and investigate.

¶ 9 At the beginning of this statement I mentioned that the Trooper appeared to have mixed motives for stopping behind Fuller and investigating. I do not believe that ramifications of a "mixed motive" need to be explored in this matter because the matter can be resolved without such discussion. However, since cases such as *Commonwealth v. Johonoson*, 844 A.2d 556 (Pa.Super.2004) (acceptable to stop to render aid, subsequent discovery of wrongdoing not suppressed), have been decided and have introduced exceptions to traffic stop law, such "mixed motive" facts may now be seen. The law is somewhat unclear as to what should happen if a police officer has both benign (safety) and suspicious (e.g. possible DUI) reasons for investigating a situation. Future cases may not include a conviction for a traffic violation that provides for probable cause. No one delved into precisely what Trooper Hoppel believed may have been taking place in this matter, so any statement regarding this would seem to be speculation. However, given the factual scenario it is not difficult to see how one could believe that the driver was in some distress or was perhaps lost or simply looking for a house number. Equally, a Trooper might believe that a driver who slows to a near stop in the middle of the road is in some manner impaired.

¶ 10 Slowing to a near stop and pulling off the road might not, in and of itself, provide a reasonable suspicion for investigation. Such behavior is not immediately indicative of either criminal behavior or of some type of distress. But it is odd behavior, to be sure, and it is understandable to see why a police officer would want to find out what, if anything, the problem is. Given the time and place of this incident, I would be blind not to realize that the Troopers must have at least suspected a DUI. However, the evidence also reflects a real issue as to the possibility of a situation where the Troopers may have simply been of some assistance. In a situation such as this where out of the ordinary behavior can signal either benign or criminal conduct I do not believe that the policy of the Commonwealth should be to require the police to ignore the situation all together because any subsequent discovery of criminal activity would not be actionable or to investigate the possibility of helping an individual but then to ignore the subsequent discovery of the criminal because such evidence would only be suppressed.

¶ 11 Thankfully, this potentially thorny issue need not be addressed in this matter. Nonetheless, because I believe the record supports a finding of reasonable suspicion, I would affirm the trial court.