J-S22003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHAAD FITZGERALD | |
| Appellant | No. 1778 WDA 2013 |

Appeal from the Judgment of Sentence October 3, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008834-2011

BEFORE:  PANELLA, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED MAY 27, 2015**

Appellant, Rashaad Fitzgerald, appeals from the judgment of sentence entered on October 3, 2013, in the Court of Common Pleas of Allegheny County.  We affirm.

Officer Lance Hoyson of the Pittsburgh Police Department was on routine patrol in a marked police wagon when he received a 911 call for "some type of domestic dispute."  N.T., Suppression Hearing, 9/4/13, at 5. Officer Hoyson explained that "[t]he caller indicated that a male, a young black male, wearing blue jeans and no shirt, it sounded as if it were a robbery.  They said he pulled a gun on a female then took her purse."  *Id*. The caller also stated that the assailant was "dragging her down the street."

---

[*] Retired Senior Judge assigned to the Superior Court.

*Id*.  Officer Hoyson and his partner arrived at the scene within 30 seconds of the call.  *See id*.

Upon arriving at the scene, Officer Hoyson observed a young black male, later identified as Fitzgerald, wearing blue jeans and a shirt and saw a young female in conversation with the male.  *See id*., at 6.  The male held a purse.  *See id*.  Officer Hoyson noted that "[w]hen they observed us, their interaction, their demeanor changed, and their interaction became very awkward.  They slowly stepped away from each other."  *Id*.  Officer Hoyson believed that these were the individuals from the 911 call.  *See id*., at 7.  He then "pointed at the male, and … ordered him to drop the purse."  *Id*.  The suspect "immediately turned and began running[.]"  *Id*.

Officer Hoyson chased Fitzgerald on foot.  *See id*.  During the chase, Officer Hoyson observed him "remove[ ] a black and silver firearm from the purse[.]"  *Id*., at 8-9.  Fitzgerald continued running and Officer Hoyson lost sight of him.  *See id*., at 9.  Officer Hoyson continued the pursuit and shortly thereafter watched as another officer took Fitzgerald into custody.  Police, using a canine, later recovered the purse with a firearm "sticking out of [the] purse."  *Id*., at 21.

Prior to trial, Fitzgerald moved to suppress evidence of the handgun, arguing that the police lacked reasonable suspicion to stop him.  After a hearing, the suppression court found that the police possessed reasonable suspicion for the stop.  Thus, it denied the suppression motion.

After a waiver trial on stipulated facts, the trial court found Fitzgerald guilty of persons not to possess firearms, 18 Pa.C.S.A. § 6105, and firearms not to be carried without a license, 18 Pa.C.S.A. § 6106. After sentencing, this timely appeal followed.

We begin with Fitzgerald's suppression issue. Fitzgerald maintains that the police's interaction with him was unlawful and that, as such, the suppression court erred in failing to suppress the firearm. We disagree.

Our standard of review when an appellant appeals the denial of a suppression motion is as follows.

> [W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. McAliley*, 919 A.2d 272, 275-276 (Pa. Super. 2007) (citation omitted).

The record supports the suppression court's factual findings. Accordingly, we turn to an examination of the suppression court's legal conclusions. The court concluded that the stop was lawful as the police possessed reasonable suspicion to conduct an investigative detention.

Of the three types of police interactions with citizens, just one is pertinent to the disposition of this case: the investigative detention,

otherwise known as a **Terry**[1] stop. An investigative detention, or **Terry** stop, "subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot." ***Commonwealth v. Fuller***, 940 A.2d 476, 479 (Pa. Super. 2007) (citing **Terry**). To determine "whether an interaction rises to the level of an investigative detention, the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." *Id*. (internal quotation marks and citation omitted).

"[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1204 (Pa. Super. 2002) (*en banc*); ***see also Florida v. Royer***, 460 U.S. 491, 498 (1983) ("**Terry** created a limited exception to this general rule: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.").

---

[1] ***Terry v. Ohio***, 392 U.S. 1 (1968)*.*

"Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate." *Reppert*, 814 A.2d at 1204 (internal quotation marks and citation omitted; brackets in original). "[T]he court must be guided by common sense concerns that give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." *Commonwealth v. Stevenson*, 894 A.2d 759, 772 (Pa. Super. 2006) (emphasis omitted).

Here, the police received an anonymous tip from a 911 caller. When

> analyzing an anonymous tip, we must determine whether under
> the totality of the circumstances the informant's tip established
> the necessary reasonable suspicion that criminal activity was
> afoot. [Both] quantity and quality of information are considered
> when assessing the totality of the circumstances. If information
> has a low degree of reliability, then more information is required
> to establish reasonable suspicion.

*Commonwealth v. Ranson*, 103 A.3d 73, 78 (Pa. Super. 2014) (internal citations omitted; brackets in original).

An examination of the totality of the circumstances reveals that the police had reasonable suspicion to conduct an investigative detention. The officers received a 911 call of an armed suspect assaulting a woman. The police arrived at the location a mere 30 seconds after the call to find a male and female fitting the description given by the caller. The only difference in

the description was *de minimis*—the male the police observed was wearing a shirt. Importantly, however, the man was holding a woman's purse. Not only that, but the demeanor between the two suddenly changed with the arrival of the police. The police, having corroborated the major details of the 911 call, had ample authority to investigate the matter further.

Once lawfully ordered to stop, Fitzgerald fled and discarded a firearm, which the police officers recovered. In **Commonwealth v. Matos**, 543 Pa. 449, 672 A.2d 769 (1996), our Supreme Court held that "contraband discarded by a person fleeing a police officer are the fruits of an illegal 'seizure' where the police officer possessed neither 'probable cause' to arrest the individual nor reasonable suspicion to stop the individual and conduct a **Terry** frisk." **Id**., at 770 (footnote added). The pursuit and subsequent stop in this case comports with the dictates of **Matos** as the police possessed reasonable suspicion. As such, the contraband discarded by Fitzgerald was voluntarily abandoned. Therefore, the suppression court committed no error in denying the suppression motion.

Fitzgerald next maintains that the evidence was insufficient to sustain the convictions as it failed to establish his awareness that the purse contained a firearm. Again, we disagree.

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to

find every element of the crime beyond a reasonable doubt." *Commonwealth v. O'Brien*, 939 A.2d 912, 913 (Pa. Super. 2007) (citation omitted).

Officer Hoyson testified that he watched Fitzgerald pull the firearm out of the purse and hold it in his hand while he ran. At that point, he possessed the firearm. The trial court credited Officer Hoyson's testimony.

In any event, Fitzgerald fled immediately after he ordered him to drop the purse. "Flight does indicate consciousness of guilt, and a trial court may consider this as evidence, along with other proof, from which guilt may be inferred." *Commonwealth v. Hargrave*, 745 A.2d 20, 23 (Pa. Super. 2000) (citation and internal quotation marks omitted). The other proof from which guilt may be inferred in this case is the 911 call that indicated that Fitzgerald was armed, the sudden change in his demeanor when the police arrived, and the fact that he was holding a woman's purse. It is eminently reasonable to infer that Fitzgerald secreted the firearm in the purse at the culmination of the robbery.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/27/2015