J-S29003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AARON BRANDON LINGARD | |
| Appellant | No. 307 WDA 2014 |

Appeal from the Judgment of Sentence January 23, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0012899-2012

BEFORE:   PANELLA, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JULY 08, 2015**

Appellant, Aaron Brandon Lingard, appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County.  On appeal, Lingard maintains that the suppression court erred in finding that an investigatory detention, conducted after an officer observed a portion of a handgun in Lingard's waistband, was supported by reasonable suspicion. We disagree and affirm.

On September 21, 2012, Officer Michael Catanzaro and a partner were on "saturation patrol" in a high-crime section of Wilkinsburg Borough.  N.T., Suppression Hearing, 12/3/13, at 4.  During a saturation patrol, the officers do not answer any calls and instead "conduct mere encounters" with citizens

_____

[*] Retired Senior Judge assigned to the Superior Court.

in an effort to gather intelligence on the area. *Id*., at 8. At approximately 2:30 in the morning, he pulled his police cruiser up behind two males walking down the street, one of whom would turn out to be Lingard. *See id*., at 6. As he exited the cruiser, Officer Catanzaro "spoke loudly" and asked if he could "talk with them to have a moment." *Id*. The males turned and said, "What's up?" *Id*.

Officer Catanzaro then explained to him why there was a police presence in the area and discussed "the other problems in the area." *Id*. At one point, he asked the pair, "You guys don't have any guns on you, do you?" *Id*., at 7. The men did not respond. *See id*. But Lingard "placed his hands out to his side" and his sweatshirt lifted up. At that point, Officer Catanzaro saw what he "believed to be a portion of a gun in this front waist area." *Id*. Officer Catanzaro immediately "secured the weapon" and placed Lingard in handcuffs. *Id*. He explained to Lingard that he was detaining him "for further investigation to check to see if he had a permit to carry that weapon." *Id*. Officer Catanzaro read Lingard his *Miranda* rights and asked if he had a permit for the handgun. *See id*. Lingard did not respond. *See id*., at 8. A check conducted by dispatch revealed that Lingard did not have a permit to carry a concealed handgun. *See id*., at 7. Officer Catanzaro then placed Lingard under arrest.

Prior to trial, Lingard moved to suppress the handgun, arguing that its seizure was the result of an illegal investigatory detention. The suppression

court denied the motion after a hearing. The matter proceeded to a bench trial on stipulated facts. The trial court found Lingard guilty of firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(2), and carrying loaded weapons other than firearms, 18 Pa.C.S.A. § 6106.1(a), a summary offense.[1] The trial court imposed a sentence of one year of probation. This timely appeal followed.

On appeal, Lingard maintains that the suppression court erred in denying his suppression motion as the investigatory detention was not supported by reasonable suspicion.

Our standard of review when an appellant appeals the denial of a suppression motion is as follows.

> [W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

_____

[1] We are unsure how Lingard was convicted of violating § 6106.1(a). That statute provides as follows: "Except as provided in Title 34 (relating to game), no person shall carry a loaded pistol, revolver, shotgun or rifle, other than a firearm as defined in section 6102 (relating to definitions), *in any vehicle*." (emphasis added). **See also** 5A Summ. Pa. Jur. 2d Criminal Law § 30:42 (2d ed.); 14 West's Pa. Prac., Crim. Offenses & Defenses § 1:545 (6th ed.). Here, Lingard was carrying the weapon on his person—not in a vehicle, but while standing in the street. In any event, Lingard does not challenge its application in this appeal.

*Commonwealth v. McAliley*, 919 A.2d 272, 275-276 (Pa. Super. 2007) (citation omitted).

The record supports the factual findings set forth earlier. Accordingly, we turn to an examination of the suppression court's legal conclusions. The court concluded that the seizure of the weapon was lawful. This legal conclusion is correct.

Preliminarily, we note that Lingard agrees that Officer Catanzaro's initial interaction with him and his companion was a mere encounter as "nothing in the record suggests that the two individuals were not free to leave." Appellant's Brief, at 12. *See Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa. Super. 2007) ("A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond."). Lingard maintains that the interaction became an illegal detention when Officer Catanzaro moved to the side of Lingard, seized the weapon, and placed him in handcuffs. *See* Appellant's Brief, at 12. It was illegal, Lingard contends, "because no reasonable person would feel they were free to leave when an officer places their hands on them after inquiring about firearms." *Id*.

We agree with Lingard that he was certainly not free to leave at that point. But that fact does not render the detention illegal. An investigative detention, or *Terry* stop, which "subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an

- 4 -

arrest, requires a reasonable suspicion that criminal activity is afoot." ***Commonwealth v. Fuller***, 940 A.2d 476, 479 (Pa. Super. 2007) (citing ***Terry v. Ohio***, 392 U.S. 1 (1968)).

"[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1204 (Pa. Super. 2002) (*en banc*); ***see also Florida v. Royer***, 460 U.S. 491, 498 (1983) ("***Terry*** created a limited exception to this general rule: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.").

"Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate." ***Reppert***, 814 A.2d at 1204 (internal quotation marks and citation omitted; brackets in original). "[T]he court must be guided by common sense concerns that give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a

weapon." ***Commonwealth v. Stevenson***, 894 A.2d 759, 772 (Pa. Super. 2006) (emphasis omitted).

Here, as detailed above, during a mere encounter, Lingard moved his arms in such a way that his sweatshirt lifted and Officer Catanzaro observed what he believed to be a portion of a handgun protruding from Lingard's waistband. At that point, Officer Catanzaro certainly had reasonable suspicion to investigate further. ***See***, ***e.g.***, ***Commonwealth v. Robinson***, 600 A.2d 957, 959 (Pa. Super. 1991) ("[P]ossession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed.").

For his safety, the law permitted Officer Catanzaro to secure the weapon during the pendency of the investigation. ***See Commonwealth v. Stevenson***, 894 A.2d 759, 772 (Pa. Super. 2006) (finding officer was permitted to "take hold" of a handgun during a valid ***Terry*** stop to insure officer safety). He was also permitted, to ensure his safety, to place Lingard in handcuffs. ***See Commonwealth v. Rosas***, 875 A.2d 341, 348 (Pa. Super. 2005) ("[F]or their safety, police officers may handcuff individuals during an investigative detention."); ***United States v. Pontoo***, 666 F.3d 20, 30 (1st Cir. 2011) ("When officer safety is a legitimate concern, a ***Terry*** stop appropriately may involve the application of handcuffs[.]").

Safety was certainly a legitimate concern in this case. Two individuals were involved; it was in the early morning hours. The area, as described by Officer Catanzaro, was a high crime area. **See** N.T., Suppression Hearing, 12/3/13, at 4 (describing area of patrol as the scene of "probably three dozen plus nonfatal shootings" among numerous other serious crime problems). And, of course, Lingard was armed during the encounter.

The main thrust of Lingard's argument is to try to disparage the credibility of Officer Catanzaro. For instance, he characterizes Officer Catanzaro's observation of the handgun as "nothing more than a mere hunch." Appellant's Brief, at 13. He further claims that the officer "did not see a bulge, an outline of a gun, the gun itself, any furtive movements, or grabbing of the waistband or anything else that would suggest what he observed was a gun." **Id**.

An argument based on refuting the suppression court's credibility determinations is unwinnable on appeal. "With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." **Commonwealth v. Tam Thanh Nguyen**, ___ A.3d ___, ___, 2015 WL 1883050, *5 (Pa. Super., filed April 27, 2015) (citation omitted). Officer Catanzaro testified that he observed what he believed to be a handgun in Lingard's waistband. The suppression court credited this testimony.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2015