J-A28020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALPHONSO PALMER | |
| Appellant | No. 3575 EDA 2014 |

Appeal from the Judgment of Sentence October 23, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003493-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 14, 2015**

Appellant, Alphonso Palmer, appeals from the judgment of sentence entered October 23, 2014, by the Honorable Giovanni O. Campbell, Court of Common Pleas of Philadelphia County.  We affirm.

The trial court summarized the facts of this case as follows.

On Ma[rch] 8, 2014 at 5:20 p.m.[, Philadelphia Police Officer Daniel Loesch] was on routine patrol with his partner, Officer Donahue[,] in the area of 2500 North Douglas Street.  On that date, he had been an officer for about 5 ½ years and had approximately three years combined as an officer in the 22nd District.  Also by that date, Police Officer Loesch had made over 10 arrests for [narcotics] and at least 15 arrests for violent offenses in that immediate area.  Approximately three shootings occurred in that immediate area at very close times [to] the [Appellant's] arrest, two of which occurred one block from where the [Appellant] was arrested and another occurring another six blocks away from the site of the [Appellant's] arrest.  Police Officer Loesch testified that a radio call was transmitted for a black male with a black hat, black jacket, and several persons in a silver Pontiac involved in a shooting.  [A]pproximately two hours later, Police Officer Loesch observed the [Appellant] with

several other males near a sliver Pontiac. He observed specifically the [Appellant] being on the vehicle from half a block away. Police [Officer] Loesch admits that the flash did not exactly match the [Appellant]. Police Officer Loesch and his partner drove to the streets without activating their sirens. As the vehicle arrived, the [Appellant] immediately began to walk, then jog, then run in full flight. As the [Appellant] ran, Police Officer Loesch saw [him] reaching to his [waistband] several times. The [Appellant] was ordered by the officers at least two times to remove his hands from his waistband but he refused to do so. After the [Appellant] was apprehended, he was immediately searched and a handgun was recovered from his person.

Trial Court Opinion, 3/23/15 at 2 (unnumbered).

Appellant was subsequently arrested and charged with carrying a firearm without a license and carrying a firearm in public in Philadelphia.[1] Prior to trial, Appellant filed a "Motion for Suppression," which the suppression court denied following a hearing. The trial court subsequently convicted Appellant of both charges and sentenced him to 30 to 60 months' incarceration, followed by five years' probation. This timely appeal followed.

Initially, we note that Appellant has not included in his brief a statement of questions involved in violation of Pa.R.A.P. 2116(a). Ordinarily, this omission would result in waiver of the claims Appellant has raised on appeal. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). However, because it is readily apparent from

---

[1] 18 Pa.C.S.A. §§ 6106 and 6108, respectively. Appellant was additionally charged with receiving stolen property, 18 Pa.C.S.A. § 3925(a), but the Commonwealth later *nolle prossed* that charge prior to trial.

Appellant's brief that he is challenging the denial of his suppression motion and this issue was properly preserved in Appellant's Pa.R.A.P. 1925(b) statement, we find no impediment to our review. We therefore decline to find waiver in this instance, and proceed to address the merits of Appellant's claim.

We review the denial of a motion to suppress physical evidence as follows.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

***Commonwealth v. Houck***, 102 A.3d 443, 455 (Pa. Super. 2014) (internal citations and quotations omitted).

The suppression court's factual findings are supported by the record. We therefore proceed to examine the propriety of the suppression court's legal conclusions.

Appellant claims that the police officers did not have reasonable suspicion of criminal activity to justify the police chase and that the firearm

obtained from his person was therefore improperly seized. Specifically, Appellant contends that his "slow jogging" from the police presence was not the type of conduct that is intended to be considered flight and that there was insufficient testimony for the suppression court to have concluded Appellant was in a high crime area. Appellant's Brief at 16, 22. We disagree.

The Fourth Amendment of the United States Constitution guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend IV. Similarly, the Pennsylvania Constitution assures citizens of our Commonwealth that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures...." Pa. Const. art. I, § 8. Further, "[t]he reasonableness of a governmental intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." ***Commonwealth v. Fleet***, 114 A.3d 840, 844 (Pa. Super. 2015) (citation omitted). Interactions between law enforcement and citizens fall into one of the following three categories.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional

- 4 -

equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Id.***, at 845 (citation omitted).

When assessing whether an interaction escalates from a mere encounter to an investigative detention, we employ the following standard.

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa. Super. 2012) (citation omitted), ***appeal denied***, 65 A.3d 413 (Pa. 2013). Moreover, when this Court evaluates whether an investigative detention is constitutional, the following principles guide our decision.

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent

- 5 -

facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Ranson***, 103 A.3d 73, 76 (Pa. Super. 2014) (citing ***Commonwealth v. Foglia***, 979 A.2d 357, 360 (Pa. Super. 2009) (en banc)).

At the suppression hearing, Officer Loesch testified that he had made more than ten narcotics-related arrests and more than 15 arrests involving violence in the general vicinity of Appellant's arrest in the prior 3½ years. ***See*** N.T., Suppression Hearing, 7/31/14 at 9. Officer Loesch further testified that there were several shootings in that area in the two weeks preceding Appellant's arrest. ***See id***., at 9-10. Although Officer Loesch did not specifically describe the area using the term "high crime area," it is clear that, in light of Officer Loesch's perspective and experience, the area was, indeed, a high crime area.

While on patrol in that high crime area, Officer Loesch received a radio flash that a shooting had occurred in the vicinity involving a black male and a silver Pontiac. ***See id***., at 11. Officer Loesch then observed several males, including the Appellant, leaning on a silver Pontiac. ***See id***., at 12. As the officers approached Appellant, the interaction was a mere encounter and no reasonable suspicion to approach was needed. ***See Commonwealth v. Fuller***, 940 A.2d 476, 479 (Pa. Super. 2007) ("A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to

stop or to respond." (internal quotation marks and citation omitted; brackets in original)).

Following this initial encounter, Appellant and his companions "immediately did a slow jogging *into a run*, which was from the east side of the street to the west side of the street, at which time [Appellant] was grabbing his waistband the whole time." ***Id***. (emphasis added). This testimony flatly contradicts Appellant's argument that he did not *run* from the police. Officer Loesch's partner then gave chase and apprehended Appellant. ***See id***., at 13. Once apprehended, the officer conducted a frisk and recovered a firearm from Appellant's waistband. ***See id***.

Under the totality of the circumstances, giving due weight to the reasonable inferences drawn by Officers Loesch and Donahue in light of their experience, we find that Appellant's unprovoked flight at the officers' approach, coupled with Officer Loesch's testimony that the area was a high crime area, sufficiently established the reasonable suspicion necessary to warrant a ***Terry*** stop under the Fourth Amendment. ***See***, ***e.g.***, ***In the Interest of D.M.***, 781 A.2d 1161, 1164 (Pa. 2001) ("[U]nprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a ***Terry*** stop under the Fourth Amendment."); ***Commonwealth v. Tucker***, 883 A.2d 625, 630-631 (Pa. Super. 2005) ("[T]he fact that Tucker was in a high crime area and fled when approached by the police provided the officers with reasonable suspicion to stop Tucker and conduct a ***Terry*** stop.").

Accordingly, we reject Appellant's claim that the trial court erred in failing to suppress the firearm recovered from his person.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015