J-S61003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTWONE D. THURSTON | |
| Appellant | No. 878 WDA 2015 |

Appeal from the Judgment of Sentence January 30, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013236-2012

BEFORE:  PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.:                **FILED SEPTEMBER 08, 2016**

Appellant, Antwone Thurston, appeals *nunc pro tunc* from the judgment of sentence entered after the trial court convicted him of two counts of burglary and other associated crimes. Thurston argues that the trial court erred in denying his suppression motion and, furthermore, that the evidence at trial was insufficient to support his convictions. After careful review, we affirm.

Pittsburgh police were conducting surveillance of a high-crime intersection when Officer Howard McQuillan observed a vehicle driven by Thurston enter a public parking lot near the intersection. Thurston proceeded to the back corner of the parking lot, and stopped next to two men sitting on a wall. One of the males on the wall approached Thurston's vehicle, and the two conversed briefly. Officer McQuillan suspected a

narcotics transaction was about to take place, but did not observe anything pass between the two men.

Thurston drove away and parked his vehicle in a different section of the parking lot. While parked, Thurston pulled out a backpack and began rummaging through it. Officer McQuillan believed that Thurston was packaging narcotics to sell to the men on the wall, and requested that plainclothes officers respond to the scene to investigate. Officer Douglas Butler and his partner entered the parking lot in their unmarked vehicle shortly thereafter.

After parking, Officer Butler approached Thurston's vehicle on foot and observed Thurston using a pry bar to open a wooden jewelry box. He also observed a laptop computer, a tablet computer, and several bags inside the vehicle. During this time, police dispatch reported several burglaries in a nearby section of the city. Officer Butler ultimately placed Thurston under arrest on charges of burglary, receiving stolen property, and possession of instruments of crime.

Thurston moved for the suppression of physical evidence obtained from his vehicle, but the trial court denied his motion. The Commonwealth withdrew several charges, and the case proceeded to a bench trial on the remaining charges. After finding Thurston guilty on all remaining charges, the trial court sentenced him to a term of incarceration of 11½ months to 23 months to be followed by ten years' probation. No direct appeal was filed.

Thurston's direct appeal rights were subsequently restored *via* a Post Conviction Relief Act proceeding. Thurston then filed this notice of appeal *nunc pro tunc*.

On appeal, Thurston raises four separate challenges to his convictions. In his first two issues, he contests the trial court's denial of his suppression motion. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-1048 (Pa. 2012) (citations omitted).

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (Pa. 2007) (citation omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823

A.2d 180, 183 (Pa. Super. 2003) (citation omitted). However, the suppression court's conclusions of law, which are not binding on an appellate court, are subject to plenary review. *See Commonwealth v. Johnson*, 969 A.2d 565, 567 (Pa. Super. 2009).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. *See In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from ... [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Fuller*, 940 A.2d 476, 478 (Pa. Super. 2007).

A mere encounter between a police officer and a citizen does not need to be supported by any level of suspicion and "carr[ies] no official compulsion on the part of the citizen to stop or respond." *Id*., at 479 (citation omitted). There is no constitutional provision that prohibits police officers from approaching a citizen in public to make inquiries of them. *See Beasley*, 761 A.2d at 624. However, a mere encounter may escalate into

an investigatory detention or seizure if police action becomes too intrusive. *See id*.

To determine whether a mere encounter rises to the level of an investigatory detention, we must determine whether, as a matter of law, the police have conducted a seizure of the person involved. *See id*. To decide whether a seizure has occurred, we must "examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." *Fuller*, 940 A.2d at 479.

Thurston first focuses on Officer McQuillan's mistaken belief that a narcotics transaction was in progress. He argues that Officer Butler had no other reason to approach Thurston's vehicle, and thus this erroneous belief was foundational to Officer Butler's decision to arrest Thurston. Thurston's argument misconstrues the record.

Prior to arriving on the scene, Officer Butler was aware of police dispatch calls regarding burglaries in the area. *See* N.T., Suppression Hearing, 11/4/13, at 18. These reports continued to be broadcast while Officer Butler approached and then interacted with Thurston. *See id*. Officer Butler had not interacted with Thurston, and in fact was merely approaching Thurston's vehicle, when he observed Thurston using a pry-bar to open a wooden jewelry box. *See id*., at 17, 19. He also observed "multiple bags, a

laptop in the passenger seat, an iPad, and there was jewelry in his hand, and there was a watch in his one hand." *Id*., at 17.

Thurston does not argue that Officer Butler was not privileged to be in the position from which he observed the contents of Thurston's vehicle. Officer Butler's observations, coupled with his knowledge of recent burglaries in the area, were enough to cause a reasonably prudent officer to suspect that Thurston was involved in criminal activity and wish to investigate further. We therefore agree with the suppression court that Officer McQuillan's mistaken impression was irrelevant to the actions subsequently taken by by Officer Butler.

Next, Thurston argues that the suppression court erred in concluding that he was not under arrest when Officer Butler began questioning him. Thurston focuses on the fact that he was asked to leave his vehicle and then handcuffed while he was questioned before being given his *Miranda*[1] warnings. However, Thurston did not pursue this issue at the suppression hearing. *See* N.T.,Suppression Hearing, 11/4/13, at 23. It is therefore waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In his third issue on appeal, Thurston contends that the evidence at trial was insufficient to sustain his conviction for burglary. Thurston does not

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

contest that the items found in his possession were the fruits of burglaries, but contends that the Commonwealth failed to establish that he was involved in the burglaries. *See* Appellant's Brief, at 19.

We review a challenge to the sufficiency of the evidence by determining whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. ***See Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa. Super. 2003). The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence. ***See Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007).

The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. ***See id***. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. ***See id***. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. ***See Commonwealth v. Kinney***, 863 A.2d 581, 584 (Pa. Super. 2004). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Bruce***, 916 A.2d at 662 (citation omitted).

Here, we have no difficulty in concluding that the Commonwealth presented substantial, albeit circumstantial, evidence that Thurston committed the burglaries. As noted previously, Officer Butler found Thurston attempting to open a jewelry box with a crowbar while seated in his vehicle parked in a public parking lot. Also found in Thurston's car were other pry bars, screw drivers, gloves, a black hat and jacket, a large yellow lock cutter, a flashlight, a police scanner, and multiple items that were admittedly stolen from the burglarized residences. **See** N.T., Suppression Hearing, 11/4/13, at 43-45. The burglarized residences had been entered through damaging an entry door. One victim stated that his door appeared to have been forced open with a crowbar. **See id**., at 34-35.

These facts are sufficient to allow a finder of fact to draw a reasonable inference that Thurston was the burglar. Thurston's third issue on appeal merits no relief.

In his final issue, Thurston argues that the evidence at trial was insufficient to support his conviction for possession of instruments of crime. Thurston argues that the crowbar and lock cutters are items that he legally possessed, and that the Commonwealth failed to establish that he intended to use them criminally. However, as we have already concluded that the evidence was sufficient to establish that Thurston was the burglar, and that there was evidence that these items were used to perpetrate the burglaries,

the fact-finder was entitled to infer that Thurston had intended to use them in a criminal manner. Thurston's final issue on appeal merits no relief.

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/8/2016